

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

F I L E D

AUG 2 0 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| **Plaintiff,** | : |
| **v.** | : |
| **COADUM ADVISORS, INC.,** | : |
| **MANSELL CAPITAL PARTNERS III, LLC,** | : |
| **JAMES A. JEFFREY,** | : |
| **THOMAS E. REPKE,** | : |
| **COADUM CAPITAL FUND 1, LLC,** | : |
| **COADUM CAPITAL FUND II, LP,** | : |
| **COADUM CAPITAL FUND III, LP, and** | : |
| **MANSELL ACQUISITION COMPANY, LP.** | : |
| **Defendants.** | : |

**Civil Action No.
1 08-CV-0011-ODE**

08 C 5 0 1 80

ILAPA A

## NOTICE OF RECEIVERSHIP

COMES NOW Pat Huddleston II, by and through his counsel, Smiley Bishop &

Porter LLP, as the Court-appointed Receiver for Coadum Advisors, Inc., Mansell

Capital Partners III, LLC, Coadum Capital Fund 1, LLC, Coadum Capital Fund II, LP,

Coadum Capital Fund III, LP, and Mansell Acquisition Company LP and hereby

provides notice of his appointment as receiver pursuant to 28 U.S.C. § 754 and files

with the Clerk a copy of the Complaint (attached as "Exhibit A"), the original Order

Appointing Pat Huddleston, II as Receiver for Coadum Advisors, Inc., Mansell Capital

Partners III, LLC, Coadum Capital Fund1, LLC, Coadum Capital Fund II, LP, Coadum

Capital Fund III, LP, and Mansell Acquisition Company LP (attached as "Exhibit

B"),1 and Order to Reappoint Receiver (attached as "Exhibit C").

Respectfully submitted August 19, 2008.

SMILEY BISHOP & PORTER LLP

J. Michael Bishop
Georgia Bar No. 058610

**SMILEY BISHOP & PORTER LLP**
1050 Crown Pointe Parkway
Suite 1250
Atlanta, GA  30338-7707
Telephone:  (770) 829-3850
Facsimile:  (770) 673-0270

---

1 The Order is fully titled "Order to Show Cause, Temporary Restraining Order,
Order Appointing Receiver, Order Freezing Assets, Order Prohibiting Destruction
of Documents and Order Expediting Discovery."

**EXHIBIT A**

ORIGINAL

FILED IN CLERK'S OFFICE
1 ° ° C  ^tlanta

JAN 0 3 2008

JAMES N. HATTEN, CLERK

By _____ y Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>               Plaintiff,<br><br>v.<br><br>COADUM ADVISORS, INC.,<br>MANSELL CAPITAL PARTNERS III, LLC,<br>JAMES A. JEFFERY,<br>THOMAS E. REPKE,<br>COADUM CAPITAL FUND 1, LLC,<br>COADUM CAPITAL FUND II, LP,<br>COADUM CAPITAL FUND III, LP, and<br>MANSELL ACQUISITION COMPANY LP.<br><br>               Defendants. | CIVIL ACTION FILE NO.<br><br>1 08-CV-0011<br><br><br>-ODE |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

The plaintiff, Securities and Exchange Commission
("Commission" or the "Plaintiff"), files this Complaint and
alleges the following:

### SUMMARY

1.    Plaintiff brings this action to enjoin violations
of the federal securities laws by, and to obtain other relief
from, Defendants Coadum Advisors, Inc. ("Coadum"), Mansell
Capital Partners III, LLC ("Mansell"), James A. Jeffery
("Jeffery"), Thomas E. Repke ("Repke"), Coadum Capital Fund

II, LP ("Coadum II"), Coadum Capital Fund III, LP ("Coadum III"), Mansell Acquisition Company LP ("MAC") and Coadum Capital Fund 1, LLC ("Coadum 1").

2.    From at least early 2006 through the present, Coadum and Mansell have fraudulently raised approximately $30 million from investors who purchased interests in Coadum 1, and three limited partnerships, Coadum II, Coadum III and MAC. Two of the offerings are ongoing. Jeffery and Repke control Coadum and Mansell and are directing the offerings.

3.    The defendants represent to investors that the investors will receive a return of from 3 to 6 percent per month (or 2.5 to 8 percent for Coadum 1). In addition, the defendants have misrepresented to investors that their principal is protected and never leaves the escrow account, or is secured by collateral. A Coadum sales brochure makes a similar statement.

4.    Coadum and Mansell have invested the majority of the funds through Exodus Equities, Inc. ("Exodus") a Malta based "investment platform" which in turn appears to have invested the funds in the Exodus Platinum Genesis Fund, Ltd. ("Exodus Platinum Fund"), a Bermuda hedge fund which has yet to begin operation, and in "Pre-REIT convertible bonds" which have yet to provide any return.

5.    In the meantime, the defendants have falsely represented in monthly account statements to investors that the investors have been earning approximately four percent per month and that all or most of their principal is in escrow.

6.    Without disclosure to investors, Coadum and Mansell have also "borrowed" in excess of $3 million of, or against, the investors' funds and have disbursed approximately an additional $5 million to apparently related parties.

7.    Defendants Coadum, Mansell, Jeffery and Repke, Coadum 1, Coadum II, Coadum III and MAC, by virtue of their conduct, directly or indirectly, have engaged and, unless enjoined, will engage in violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Coadum, Mansell, Repke and Jeffery have violated , and unless enjoined will continue to violate, Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. 15 U.S.C. §§ 80b-6 (1) and (2)].

8.    The Commission seeks a temporary restraining order, preliminary and permanent injunctions, an accounting, disgorgement and pre-judgment interest, and civil penalties against all of the defendants.  On an interim basis, the

3

Commission also seeks an asset freeze as to all defendants and seeks the appointment of a Receiver for Coadum, Mansell, Coadum 1, Coadum II, Coadum III and MAC.

## JURISDICTION AND VENUE

9.    The Commission brings this action pursuant to Sections 20(b), (c) and (d) of the Securities Act [15 U.S.C. §§ 77t(b)-(d)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)], and Sections 209(d) and 209 (e) of the Advisers Act [15 U.S.C. §§ 80b-9(d)-(e)] to enjoin the Defendants from engaging in the transactions, acts, practices and courses of business alleged in this Complaint, and transactions, acts, practices and courses of business of similar purport and object, for an accounting, disgorgement of illegally obtained funds and other equitable relief, and for civil money penalties.

10.    This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

11.    The Defendants, directly and indirectly, have made use of the mails, the means and instruments of transportation and communication in interstate commerce, and the means and instrumentalities of interstate commerce, in connection with

4

the transactions, acts, practices, and courses of business

alleged in this Complaint.

12.    Venue lies in this Court pursuant to Section 22(a)

of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the

Exchange Act [15 U.S.C. § 78aa], and Section 209 of the

Advisers Act [15 U.S.C. § 80b-9] because certain of the

transactions, acts, practices and courses of business

constituting violations of the Securities Act, the Exchange

Act and the Advisers Act have occurred within the Northern

District of Georgia.  Among other things, investors' funds in

excess of $20 million were wire transferred to an escrow

account within the Northern District.  At the instruction of

and through the efforts of the defendants, the investors'

funds were then wire transferred from the account in the

Northern District to various offshore accounts.  Further,

defendant Mansell is a Georgia company with its principal

place of business located within the Northern District.

### THE DEFENDANTS

13.    Coadum Advisors, Inc. is a Delaware limited

liability company. Coadum is a general partner to Coadum II.

14.    Mansell Capital Partners III, LLC, a Georgia

company organized on February 12, 2005, serves as the General

Partner to the MAC Income Opportunity Fund. Mansell is not

5

currently and has never been a Delaware company as claimed in MAC's PPM.

15.   James A. Jeffery, of Belleville, Ontario, Canada, is the president and a director of Coadum and Mansell. Jeffery is also currently employed with Puritan Securities, Inc.

16.   Thomas E. Repke, of Holladay, Utah, is the secretary and treasurer and a director of Coadum and Mansell. Repke is a graduate of C.W Post College of Long Island University with a degree in accounting and finance.

17.   Coadum Capital Fund II, LP, is a Delaware limited partnership. Coadum is its general partner.

18.   Coadum Capital Fund III, LP is a Delaware limited partnership. Its PPM lists Coadum Advisors I, LLC as the general partner. Coadum Advisors I, LLC is described as a Delaware limited liability company. No such LLC is registered in Delaware.

19.   Mansell Acquisition Company, LP, is a Delaware general partner. Mansell is its general partner.

20.   Coadum Capital Fund 1 LLC, is a Delaware limited liability company. Jeffery has been its president.

6

## FACTS

### A.  The Securities Offerings

21.    Between January and May 2006, Coadum solicited residents of Canada and the United States to invest in Coadum 1.

22.    Sales representatives promised investors a "perfect blend" of a secure principal and earnings of 2.5-8% per month.

23.    In May 2006, the Alberta Securities Commission brought an administrative proceeding against Coadum, Coadum 1, Jeffery, Repke and others, alleging fraud and other violations.  That matter remains pending.

24.    Shortly thereafter, Coadum ceased promoting Coadum 1, rolled the investors into Coadum II, and began an offering in the United States and Canada of limited partnership interests in Coadum II.

25.    The Coadum II offering took place between July 2006 and July 2007.

26.    In April 2007, Coadum began selling limited partnership interests in Coadum III. That offering is continuing.

27.    On August 31, 2007, Mansell began selling interests in MAC.  That offering is also continuing.

7

28.    In excess of 150 investors, located throughout the United States and Canada, bought interests in Coadum 1, Coadum II, Coadum III and MAC.

29.    Coadum and Mansell have raised approximately $30 million from investors who purchased limited partnership interests in the three offerings.

30.    Coadum is general partner and investment adviser to Coadum II and Coadum III, while Mansell is general partner and investment adviser to MAC.

31.    An entity denoted Coadum Advisors I, LLC is listed as the general partner of Coadum III. Coadum Advisors I, LLC is described as a Delaware limited liability company. Jeffery and Repke are described as the co-managing members. However, no such entity is registered in Delaware. An entity denoted Coadum Advisors LLC is registered in Delaware and may be the actual general partner. Regardless, Coadum is functionally conducting the offering and receiving the proceeds.

32.    The limited partnerships and Coadum 1 (an LLC) have offered and sold their securities to the public through Jeffery, Repke and Coadum's vice president of marketing, and certain registered representatives associated with a registered broker-dealer.

33.    The PPMs describe an investment objective involving the general partner or its team of investment

8

managers pursuing a series of "risk-controlled" strategies.
Those strategies allegedly consist of purchasing AA or better
rated securities at one price, and simultaneously selling the
securities at a higher price, generating a profit on the price
difference, which the PPMs refer to as "commercial trading
programs."

34.    At least some of the investors have been assured of
at least 3% and at most 6% return per month (in the case of
Coadum 1, 2.5%-8%) on their initial investments and can take
accrued earnings in cash at the end of each quarter or roll
them over into the limited partnership.

35.    The PPMs disclosed that the general partner is
allocated, subject to a "hurdle" rate, a performance share
equal to 85% of the appreciation credited to the capital
account of each limited partner.

36.    The PPMs also provide that the partnerships will
reimburse the respective general partner for certain
reasonable formation and investment related expenses.

37.    Through oral· and written communications and
meetings with investors, and through power point presentations
to representatives associated with broker-dealers, the
promoters and at least one salesman solicited potential
investors to invest in the limited partnerships by depositing
a minimum of $100,000 into an escrow account held by Mayer and

9

Associates, PC. ("Mayer PC") or another escrow account held by
CFO Escrow Services, LLC, which transferred all deposits to
Mayer PC.

38.    The "escrow agent" is Mayer PC, a law firm operated
by Melanie Mayer, an Atlanta area attorney.

39.    Mayer did not apply any escrow criteria to the
funds, but forwarded them to Coadum and others as directed by
Repke and Jeffery.

40.    Since July 2006, investors deposited approximately
$30 million into the escrow account for limited partnership
interests in Coadum and Mansell.

41.    Mayer, as escrow agent, and at the direction of
Coadum and Jeffery, wire transferred a substantial majority of
that amount to offshore accounts controlled by Exodus
Equities, Inc. a Malta based entity.

42.    The funds were purportedly invested in the Exodus
Platinum Fund, and through Soleil Group Holdings Limited
("Soleil") at banks in Switzerland and on Malta.

43.    Exodus Platinum Fund is a Bermuda exempted mutual
fund company.

44.    Exodus Platinum Fund never launched, never actively
traded, and never paid any earnings.

45.    Soleil is also controlled by Exodus.

10

46.   Like Exodus Platinum, Soleil has no active investment program and has had no earnings.

47.   Soleil is purportedly in the "pre REIT process" of collecting funds to establish a REIT in the Netherlands.

48.   Once the REIT is established, it ostensibly plans to issue convertible bonds for shares in the trust.

49.   The remainder of the investors' funds were transferred to Coadum and appear to have been distributed to various entities affiliated with the defendants.

50.   The defendants have been providing investors with monthly statements reflecting returns of four percent per month.

51.   Based apparently on those statements, most investors have been rolling over their "profits" or "earnings," or adding new investments.

52.   Some investors have withdrawn money.

53.   Approximately $1.7 million has been paid out.

54.   In addition, Coadum has borrowed $1 million from Coadum 1, $1 million from Coadum II and $1.355 million from investor funds held by Mayer PC.

55.   Repke and Jeffery, acting as the board of directors of the respective partnerships or LLC, passed resolutions authorizing the "loans."

11

B.    **Material Misrepresentations and Omissions**

### Fictitious Returns

56.    Coadum and Mansell have falsely represented in monthly account statements to investors that all or most of their principal is in escrow and that they have been earning approximately four percent per month.

57.    The investors generally roll over their "profits" or invest additional funds.

58.    As noted above, there have been no earnings on the funds invested with Exodus.

### Undisclosed Loans

59.    During 2007, Jeffery and Repke, despite their fiduciary duties to the investors, failed to disclose to investors that they borrowed a total of approximately $3.4 million for three loans to Coadum.

60.    On October 30, 2006, Repke and Jeffery executed a Resolution of the Board of Directors for Coadum 1 to authorize Exodus Platinum to transfer $1 million to Coadum Advisors as a bridge loan against funds held by Exodus Platinum Fund for "the purpose of liquidity for our projects."

61.    On November 2, 2006, bank records show that Exodus deposited by wire transfer $1 million into Coadum's bank account.

12

62.   On March 26, 2007, Repke and Jeffery, acting as the board of Coadum II, executed another resolution for a $1 million bridge loan against Coadum II's funds held by Exodus for "the purpose of liquidity for our projects."

63.   Coadum Advisors' bank account shows this $1 million loan from Exodus Platinum Fund deposited by wire transfer on March 30, 2007.

64.   Another undisclosed loan of investors' funds occurred on October 10, 2007, upon Jeffery's direction to the escrow agent to transfer $1.355 million from the escrow account to Coadum's bank account.

65.   Those funds have been used to fund the operations of Coadum and Mansell, and have also been used to make distributions to related entities.

66.   The PPMs make no mention that the general partners might loan partnership funds to themselves.

### Principal Preservation

67.   The defendants and their agents misrepresent to investors that the investors' principal will be protected. The defendants have orally misrepresented to investors that their principal is protected and never leaves the escrow account. A Coadum sales brochure and other written materials make similar statements.

13

68.    One document offers "Principal Preservation," which
is purportedly achieved by leaving client funds on deposit at
an escrow company, pledging those funds to an asset manager
which provides a U.S. Treasury security equal to the principal
amount. The asset manager also establishes a line of credit
against the principal which is used for trading purposes. The
providers of the line of credit purportedly have no recourse
against the Treasury security.  According to the
representations, this procedure guarantees that the funds are
never at risk.

69.    Similar representations are reflected in Coadum
II's client account statements. The account statements are
entitled, "PRINCIPAL PRESERVED ALTERNATIVE INVESTMENTS FOR
GROWTH-ORIENTED CLIENTS" and report the client's total amount
of investment funds as "Ending Principal Balance In Escrow
Account."

70.    The statements also include a Capital Enhancement
Program ("CEP") earnings activity report that shows the
earnings rolled over (assuming the purported earnings have
been rolled over).

71.    Accordingly, "the ending principal balance in the
escrow account" amounts to the investment funds and purported
cumulative earnings.

14

72.   Another document provided to investors is entitled "A Summary of Codium [sic] Capital Fund 1, LLC Capital Enhancement Program." That document represents that the investor's money will be locked into an escrow account in the investor's name on a "non-recourse" basis and that no one but the investor will have the ability to remove the principal amount. The promoters then claim that they will obtain a "non-recourse leveraged margin account" which will be used for trading, at no risk to the investor.

73.   In fact, no such risk free investment exists. Investors' funds have not been held in escrow as represented but have been borrowed by the defendants, disbursed to related entities, and invested in various overseas investments.

## COUNT I--FRAUD
### Violations of Section 17(a)(1) of the Securities Act
#### [15 U.S.C. § 77q(a)(1)]

75.   Paragraphs 1 through 73 are hereby realleged and are incorporated herein by reference.

76.   At various times from at least January 2006 through the present, Defendants Coadum, Mansell, Jeffery, Repke, Coadum 1, Coadum II, Coadum III and MAC, in the offer and sale of the securities described herein, by the use of means and instruments of transportation and communication in interstate commerce and by use of the mails, directly and indirectly,

15

employed devices, schemes and artifices to defraud purchasers
of such securities, all as more particularly described above.

77.   The Defendants knowingly, intentionally, and/or
recklessly engaged in the aforementioned devices, schemes and
artifices to defraud.

78.   In engaging in such conduct, the Defendants acted
with scienter, that is, with intent to deceive, manipulate or
defraud or with a severe reckless disregard for the truth.

79.   By reason of the foregoing, the Defendants, directly
and indirectly, have violated and, unless enjoined, will
continue to violate Section 17(a)(1) of the Securities Act [15
U.S.C. § 77q(a)(1)].

### COUNT II--FRAUD
### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

80.   Paragraphs 1 through 73 are hereby realleged and are
incorporated herein by reference.

81.   At various times from at least July 2006 through the
present, Defendants Coadum, Mansell, Jeffery, Repke, Coadum 1,
Coadum II, Coadum III and MAC, in the offer and sale of the
securities described herein, by use of means and instruments of
transportation and communication in interstate commerce and by
use of the mails, directly and indirectly:

16

a) obtained money and property by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

b) engaged in transactions, practices and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities, all as more particularly described above.

82.    By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

### COUNT III--FRAUD
### Violations of Section 10(b) of the Exchange Act
### [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder   [17 C.F.R. § 240.10b-5]

83.    Paragraphs 1 through 73 are hereby realleged and are incorporated herein by reference.

84.    At various times from at least July 2006 through the present, Defendants Coadum, Mansell, Jeffery, Repke, Coadum 1, Coadum II, Coadum III and MAC, in connection with the purchase and sale of securities described herein, by the use of the means and instrumentalities of interstate commerce and by use of the mails, directly and indirectly:

17

a)   employed devices, schemes, and artifices to defraud;

b)   made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

c)   engaged in acts, practices, and courses of business which would and did operate as a fraud and deceit upon the purchasers of such securities,

all as more particularly described above.

85.   The Defendants knowingly, intentionally, and/or recklessly engaged in the aforementioned devices, schemes and artifices to defraud, made untrue statements of material facts and omitted to state material facts, and engaged in fraudulent acts, practices and courses of business.  In engaging in such conduct, the Defendants acted with scienter, that is, with intent to deceive, manipulate or defraud or with a severe reckless disregard for the truth.

86.   By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

18

### COUNT IV—FRAUD BY INVESTMENT ADVISER
### Violations of Sections 206(1) and 206(2) of Advisers Act
### [15 U.S.C. § §80b-6(1),(2)]

87.  Paragraphs 1 through 73 are hereby realleged and are incorporated herein by reference.

88.  Coadum, Mansell, Jeffery and Repke were at all relevant times "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

89.  Coadum, Mansell, Jeffery and Repke, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce: (a) have acted knowingly or recklessly, have employed devices, schemes, or artifices to defraud; or (b) have engaged in transactions, practices, or courses of business which operated as fraud or deceit upon a client or prospective client.

90.  By reason of the transactions, acts, omissions, practices and courses of business set forth herein, Defendants Coadum, Mansell, Jeffery and Repke have violated, and unless enjoined will violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1),(2)].

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Commission respectfully prays for:

I.

19

Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, finding that the Defendants named herein committed the violations alleged herein.

## II.

A temporary restraining order, preliminary and permanent injunctions enjoining all of the Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order of injunction, by personal service or otherwise, and each of them, whether as principals or as aiders and abettors, from violating, directly or indirectly, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder; and further enjoining defendants Coadum, Mansell, Jeffery and Repke from Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. 15 U.S.C. §§ 80b-6 (1) and (2)].

## III.

An order requiring an accounting by the Defendants of the use of proceeds of the sales of the securities described in this Complaint, as well as the disgorgement of all ill-gotten gains or unjust enrichment by defendants.

IV.

An order appointing a Receiver for Coadum, Mansell, Coadum
1, Coadum II, Coadum III and MAC.

V.

An order directing the Defendants to pay prejudgment
interest on the amount ordered to be disgorged, to effect the
remedial purposes of the federal securities laws.

VI.

An order pursuant to Section 20(d) of the Securities Act
[15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15
U.S.C. § 78u(d)(3)] and, with respect to Coadum, Mansell, Repke
and Jeffery, Section 209 of the Advisers Act [15 U.S.C. 80b-
9]imposing civil penalties against the Defendants.

VII.

Such other and further relief as this Court may deem just,
equitable, and appropriate in connection with the enforcement
of the federal securities laws and for the protection of
investors.

Dated: January 2, 2008.

Respectfully submitted,

William P. Hicks
Regional Trial Counsel
Georgia Bar No. 351649

21

Edward G. Sullivan
Senior Trial Counsel
Georgia Bar No. 691140

Counsel for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
3475 Lenox Road, N.E., Suite 1000
Atlanta, Georgia 30326-1232
Telephone: (404) 842-7675 (Hicks)
           (404) 842-7612 (Sullivan)
Fax: (404) 842-7679
HicksW@sec.gov
sullivane@sec.gov

**EXHIBIT B**



FILED IN CHAMBERS
U.S.D.C. - Atlanta

'JAN  3 2008

JAMES N. HATTEN, Clerk
BY
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                    Plaintiff,

v.

COADUM ADVISORS, INC.,
MANSELL CAPITAL PARTNERS III, LLC,
JAMES A. JEFFERY,
THOMAS E. REPKE,
COADUM CAPITAL FUND 1, LLC.,
COADUM CAPITAL FUND II, LP,
COADUM CAPITAL FUND III, LP, and
MANSELL ACQUISITION COMPANY LP.

                    Defendants.

CIVIL ACTION FILE NO.

1:08 CN 11-ODE

**ORDER TO SHOW CAUSE, TEMPORARY RESTRAINING
ORDER, ORDER APPOINTING RECEIVER, ORDER FREEZING ASSETS,
ORDER PROHIBITING DESTRUCTION OF DOCUMENTS AND
ORDER EXPEDITING DISCOVERY**

Upon the Motion of the Securities and Exchange Commission

("Commission"), upon the Certification of the Commission

submitted pursuant to Rule 65(b) and (d) of the Federal Rules of

Civil Procedure, and upon the Complaint in this action and

supporting documents relied on and submitted therewith, and it

appearing from the allegations set forth in the papers submitted

3

by the Commission that the defendants Coadum Advisors, Inc.,
("Coadum") Mansell Capital Partners III, LLC ("Mansell"), James A.
Jeffery ("Jeffery"), Thomas E. Repke ("Repke"), Coadum Capital
Fund 1, LLC.("Coadum 1"),Coadum Capital Fund II ("Coadum II"),
LP, Coadum Capital Fund III, LP ("Coadum III"), and Mansell
Acquisition Company LP ("MAC"),(collectively "Defendants")
pending final determination of this action may, unless
restrained, continue to engage in acts and practices which
constitute violations of Section 17(a) of the Securities Act of
1933 ("Securities Act")[15 U.S.C. 77q(a)], Section 10(b) of the
Securities Exchange Act of 1934 ("Exchange Act")[15 U.S.C.
78j(b)], and Rule 10b-5 [17 C.F.R. 240.10b-5] promulgated
thereunder, and defendants Coadum, Mansell, Jeffery and Repke
may, unless restrained, continue to also engage in acts and
practices which constitute violations Sections 206(1) and 206(2)
of the Investment Advisers Act of 1940 ("Advisers Act") [15
U.S.C. 15 U.S.C. §§ 80b-6 (1) and (2)], and that the defendants
may further dissipate funds fraudulently obtained, and it
appearing that adequate grounds exist for the issuance of this
Order,

4

## I.

**IT IS HEREBY ORDERED** that defendants show cause, if any there be, before Judge _Orinda D. Evans_ of this Court, at _1:30 pm_ o'clock in the _____ on the _17th_ day of _January_, 2008 in Courtroom _1908_ of the Richard B. Russell United States Courthouse and Federal Building, 75 Spring Street, S.W., Atlanta, Georgia, 30303, or as soon thereafter as the matter can be heard, why a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure should not be granted, as requested by the Commission.

## II.

**IT IS FURTHER ORDERED** that the Commission may take expedited discovery as follows:

A.    The Commission may take depositions upon oral examination subject to three days notice prior to expiration of 30 days after service of the Summons and Complaint upon defendant, pursuant to Rule 30(a) of the Federal Rules of Civil Procedure;

B.    Pursuant to Rule 34 of the Federal Rules of Civil Procedure, upon request of the Commission, the defendants shall produce all documents within three days of service of such request;

5

C.   The Commission may serve discovery by facsimile or by any other means provided for within the Federal Rules of Civil Procedure;

D.   All written responses to the Commission's requests for discovery under the Federal Rules of Civil Procedure shall be delivered to the Commission at 3475 Lenox Road N.E., Suite 1000, Atlanta, Georgia 30326-1232, or such other place as counsel for the Commission may direct, by the most expeditious means available, including facsimile.

### III.

IT IS **FURTHER ORDERED** that, pending determination of the Motion for Preliminary Injunction, the assets of defendants Coadum, Mansell, Jeffery, Repke, Coadum 1, Coadum II, Coadum III and MAC be, and hereby are, frozen. The freeze shall include but not be limited to those funds located in any bank accounts of the defendants.  In addition, proceeds derived from the securities offerings alleged in the Commission's complaint remaining in the custody and control of defendants Coadum, Mansell, Jeffery, Repke, Coadum 1, Coadum II, Coadum III and MAC are hereby frozen regardless of where said proceeds are located.  Pending determination of the Motion for Preliminary Injunction, defendants Coadum, Mansell, Jeffery, Repke, Coadum 1, Coadum II, Coadum III

6

MAC and their officers, agents, servants, employees, attorneys,
and all persons in active concert or participation with them,
except any trustee, receiver or special fiscal agent appointed by
this Court, be, and hereby are, restrained from, directly and
indirectly, transferring, setting off, receiving, changing,
selling, pledging, assigning, liquidating or otherwise disposing
of or withdrawing any assets and property owned by, controlled by,
or in the possession of said defendants. This court further
enjoins any disbursement by defendants Coadum, Mansell, Jeffery,
Repke, Coadum 1, Coadum II, Coadum III and MAC, their agents,
representatives, employees and officers and all persons acting in
concert or participation with them, whatever business names they
may operate under, of any proceeds derived from the sales of
securities described in the complaint.

IV.

   **IT IS FURTHER ORDERED** that each defendant prepare and present
to this Court and to the Commission a sworn accounting of all
funds received by that defendant pursuant to the scheme described
in the Commission's Complaint and of the disposition and use of
said proceeds.  This accounting shall include, but not be limited
to, the name and address of each investor (for entities
contracting with investors), the amount invested, the total amount

7

received from investors, the date each such investment was made
and a listing of all expenditures showing the amount and to whom
paid and the date of payment.  The accountings shall be submitted
to this Court and served upon the Commission within 20 days from
the date of entry of this Order.

V.

IT IS FURTHER ORDERED that, pending determination of the
Motion for Preliminary Injunction, all defendants and their
agents, servants, employees, attorneys and those persons in active
concert or participation with them, in connection with the
purchase or sale or in the offer or sale of securities, by use of
any means or instrumentalities of interstate commerce or any means
or instruments of transportation or communication in interstate
commerce, or by the mails or any facility of any national
securities exchange, be, and they hereby are, restrained from,
directly or indirectly:

(1)   employing any device, scheme or artifice to defraud;

(2)   engaging in any act, practice or course of business
which operates or would operate as a fraud or deceit upon any
person;

(3)   obtaining money or property by means of any untrue
statement of a material fact, or omitting to state a material fact

8

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(4)  making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

## VI.

**IT IS FURTHER ORDERED** that, pending determination of the Motion for Preliminary Injunction, defendants Coadum, Mansell, Jeffery and Repke and their agents, servants, employees, attorneys and those persons in active concert or participation with them hereby are enjoined and restrained from, directly or indirectly:

(1)  employing devices, schemes, or artifices to defraud clients or prospective clients; or

(2)  engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients;

9

in violation of Sections 206(1) and (2) of the Investment Advisers
Act of 1940 [15 U.S.C. § 80b-6(1) and (2)]

## VII.

**IT IS FURTHER ORDERED** that, pending determination of the
Motion for Preliminary Injunction, defendants and their officers,
agents, employees, servants, attorneys, any bank or financial
institution holding any assets of the defendants and all persons
in active concert or participation with them, and each of them,
are restrained and enjoined from destroying, transferring or
otherwise rendering illegible all books, records, papers, ledgers,
accounts, statements and other documents employed in any of such
defendants' business, which reflect the business activities of any
of the defendants, or which reflect the transactions described in
the Commission's Complaint.

## VIII.

**IT IS FURTHER ORDERED** that, pending further order of the
Court, *Pat Huddleston II* be and hereby is appointed as Receiver,
without bond, for the estates of Defendants Coadum, Mansell,
Coadum 1, Coadum II, Coadum III and MAC unless and until the Court
orders otherwise. The estates for which *Pat Huddleston II* is hereby
appointed Receiver are hereinafter referred to as the "Receiver
Estate." The Receiver Estate includes, but is not limited to, all

10

assets acquired for the benefit of Coadum and/or Mansell, and/or
Coadum 1, and/or Coadum II, and/or Coadum III and/or MAC and any
entities or assets owned by them.

### IX.

IT IS FURTHER ORDERED that the Receiver shall have and
possess all powers and rights to efficiently administer and manage
the Receiver Estate, including but not limited to the power:

A.    to take custody, control and possession of all the
funds, property, premises, leases, and other assets of or in the
possession or under the direct or indirect control of the Receiver
Estate, to manage, control, operate and maintain the Receiver
Estate, to use income, earnings, rents and profits of the Receiver
Estate, with full power to sue for and collect, recover, receive
and take into possession all goods, chattels, rights, credits,
monies, effects, lands, books and records of accounts and other
papers;

B.    to sell, rent, lease or otherwise hypothecate or
dispose of the assets of the Receiver Estate;

C.    to pursue, resist and defend all suits, actions, claims
and demands which may now be pending or which may be brought by or
asserted against the Receiver Estate;

11

D.   to make such payments and disbursements from the funds so taken into his custody, control and possession or thereafter received, and to incur such expenses as may be necessary or advisable in the ordinary course of business in discharging the Receiver's duties;

E.   to open bank accounts in the name of the Receiver on behalf of the Receiver Estate;

F.   to engage and employ others (without Court approval), including but not limited to consultants, attorneys, accountants, experts and employees of a firm owned by the Receiver, to assist in the Receiver's duties, except that any payment to others for their services shall be subject to Court approval;

G.   to take any action which could be taken by the officers, directors, partners and trustees of the Receiver Estate;

H.   to suspend, terminate or grant a leave of absence to any employees of the Receiver Estate; and

I.   to take such other action as may be approved by this Court.

**X.**

**IT IS FURTHER ORDERED** that no person holding or claiming any position of any sort with the Receiver Estate shall possess any authority to act by or on behalf of any of the Receiver Estate,

12

except as authorized by the Receiver.  With respect to the asset
freeze set forth herein, the Receiver shall be authorized, but not
required, to administer, manage, and direct the marshaling,
disbursement and/or transfer of monies or other assets held by
third parties that are subject to the freeze. The Receiver may, in
the reasonable exercise of his discretion, authorize the release,
use or segregation of proceeds held by third parties if the
Receiver believes such action is necessary to preserve the
Receiver Estate.

### XI.

IT IS **FURTHER ORDERED** that no shareholders, officers,
directors, partners or trustees of the corporations or other
entities that make up the Receiver Estate shall exercise any of
their rights or powers with respect to the Receiver Estate until
further order of the Court.

### XII.

IT IS **FURTHER ORDERED** that all persons receiving notice of
this order by personal service or otherwise, are hereby restrained
and enjoined from disposing, transferring, exchanging, assigning
or in any way conveying any property or assets of the Receiver
Estate and from the transaction of any business of the Receiver
Estate except with the approval of the Receiver.

13

### XIII.

**IT IS FURTHER ORDERED** that, all persons acting for or on behalf of the Receiver Estate, and all persons receiving notice of this order by personal service or otherwise, having possession of the property, business, books, records, accounts or assets of the Receiver Estate are hereby directed to deliver the same to the Receiver.

### XIV.

**IT IS FURTHER ORDERED** that the Defendants, their agents, servants, employees, nominees, attorneys and entities under their direct or indirect control shall cooperate with and assist the Receiver and shall take no action, directly or indirectly, to hinder, obstruct, or otherwise interfere with the Receiver, in the performance of the Receiver's duties. This section shall not be construed to waive any privileges of any person, Constitutional or otherwise.

### XV.

**IT IS FURTHER ORDERED** that any brokerage institution, financial institution, bank, savings and loan, mutual fund, or any other person, partnership, or corporation maintaining or having custody or control of any brokerage or deposit account or other assets of any of the Receiver Estate or under their control, and

14

that receives actual notice of this order by personal service,
facsimile transmission or otherwise shall, within five (5)
business days of receipt of that notice, file with the Court and
serve on the Receiver and counsel for the Commission a certified
statement setting forth, with respect to each such account or
other asset, the balance in the account or description of the
assets as of the close of business on the date of receipt of the
notice.

### XVI.

IT IS FURTHER ORDERED that the Receiver shall perform an
accounting of the defendants' securities offerings as outlined in
the Commission's complaint, including but not limited to the
defendants' solicitation, receipt, disposition and use of the
proceeds from such offerings.

### XVII.

IT IS FURTHER ORDERED that the Receiver shall have the power
to compel, including by subpoena, the appearance and testimony of
all persons and the production of the originals of any records, of
any sort whatsoever, within the possession, custody or control of
any person. The Receiver's authority under this paragraph shall
not be construed to require the waiver by any person of any
validly asserted privilege.

15

## XVIII.

IT IS **FURTHER ORDERED** that, on fifteen (15) days written notice from the Receiver, the defendants shall make themselves available for deposition and shall produce to the Receiver the originals of any records in their custody, possession or control relating to the financial affairs, from January 1, 2006 through the present, of Coadum, Mansell, Coadum 1, Coadum II, Coadum III and MAC.

## XIX.

IT IS **FURTHER ORDERED** that the Receiver may investigate in connection with discovering additional information as it relates to activities of Coadum, Mansell, Coadum 1, Coadum II, Coadum III and MAC.  The Receiver shall have the authority to investigate regarding such related parties and employees prior to filing any litigation, and shall have the express authority to order consumer reports in the course of any such investigation.

## XX.

IT IS **FURTHER ORDERED** that the Receiver and any person engaged or employed by the Receiver, are entitled to reasonable compensation from the assets of the Receiver Estate, subject to the prior approval of the Court.

16

### XXI.

IT IS **FURTHER ORDERED** that the Receiver shall be empowered, but is not required, to file voluntary petitions for relief under Title 11 of the United States Code (the Bankruptcy Code) for the Receiver Estate.  If a bankruptcy petition is filed, the Receiver shall become, and shall be empowered to operate the Receiver Estate, and to prosecute such adversary proceedings and other matters as may be permitted under the Bankruptcy Code and/or applicable law.

### XXII.

IT IS **FURTHER ORDERED** that the Receiver, should he elect to file petitions under Title 11 of the United States Code for any of the Receiver Estate, shall have 15 days from the date of such filing to file with the Bankruptcy Court any lists or schedules required to be filed with such petitions, this Court recognizing that the Receiver will require time to assemble such data for filing.

### XXIII.

IT IS **FURTHER ORDERED** that except by leave of this Court all creditors and other persons seeking money damages or other relief from the Receiver Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals,

and all officers and deputies, and their respective attorneys, servants, agents and employees, are, until further order of this Court, hereby stayed and restrained from doing anything to interfere with the possession, recovery or management by the Receiver of the property and assets owned, controlled, belonging to, or in the possession of the Receiver Estate, or to interfere with the Receiver in any manner during the pendency of this proceeding.

### XXIV.

**IT IS FURTHER ORDERED** that the Receiver is authorized to communicate with all such persons as the Receiver deems appropriate to inform them of the status of this matter and the financial condition of the Receiver Estate.

### XXV.

**IT IS FURTHER ORDERED** that the Receiver is authorized to record this Order with government offices and to serve this Order on any person as the Receiver deems appropriate.

### XXVI.

**IT IS FURTHER ORDERED** that the Receiver shall promptly notify the Court and counsel for the Commission of any failure or apparent failure of the defendants to comply in any way with the terms of this Order.

18

## XXVII.

**IT IS FURTHER ORDERED** that, except for an act of gross negligence or intentional misconduct, the Receiver and all persons engaged or employed by him shall not be liable for any loss or damage incurred by the defendants, or any other person, by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter.

## XXVIII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall retain jurisdiction of this matter for all purposes.

Service of this Order shall be effected upon defendants or their controlling persons, attorneys or registered agents personally, by facsimile, by overnight courier, or by mail on or before the _6_ day of ___January___, 2007 at or before _2:00_ ___ p.m.

Dated: _January 3_, 2008.

_____
UNITED STATES DISTRICT JUDGE

19

**<u>EXHIBIT C</u>**

FILED IN CHAMBERS
U.S.D.C. Atlanta

AUG 15 2008

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

    v.

COADUM ADVISORS, INC., MANSELL
CAPITAL PARTNERS III, LLC, JAMES A.
JEFFREY, THOMAS E. REPKE, COADUM
CAPITAL FUND 1, LLC, COADUM
CAPITAL FUND II, LP, COADUM
CAPITAL FUND III, LP, and MANSELL
ACQUISITION COMPANY LP,

      Defendants.

Civil Action File
No. 1:08-CV-00011-ODE

## ORDER TO REAPPOINT RECEIVER

Having considered (1) Pat Huddleston's Motion for Reappointment of

Receiver and Memorandum of Law In Support of Motion to Reappoint Receiver;

(2) Receiver's First Interim Report; (3) the Court's January 3, 2008 Order to Show

Cause, Temporary Retraining Order, Order Appointing Receiver, Order Freezing

Assets, Order Prohibiting Destruction of Documents and Order Expediting

Discovery; (4) and upon the Complaint in this action and supporting documents

relied on submitted therewith, and it appearing that adequate grounds exist for

issuance of this Order:

1.

IT IS HEREBY ORDERED that, pending further order of the Court, Pat Huddleston II be and hereby is reappointed as Receiver, without bond, for the estates of Defendants Coadum Advisors, Inc., Mansell Capital Partners III, LLC, Coadum Capital Fund I, LLC, Coadum Capital Fund II, LP, Coadum Capital Fund III, LP, and Mansell Acquisition Company, LP[1] unless and until the Court orders otherwise. The estates for which Mr. Huddleston is hereby appointed Receiver are hereinafter referred to as the "Receiver Estate." The Receiver Estate includes, but is not limited to, all assets acquired for the benefit of Coadum and/or Mansell, and/or Coadum I, and/or Coadum II, and/or Coadum III, and/or MAC, and any entities or assets owned by them.

2.

IT IS FURTHER ORDERED that the Receiver shall have and possess all powers and rights to efficiently administer and manage the Receiver Estate, including but not limited to the power:

A. to take custody, control and possession of all the funds, property, premises, leases, and other assets of or in the possession or under the direct or indirect control of the Receiver Estate, to manage, control, operate and maintain

---

[1] Hereinafter Coadum, Mansell, Coadum I, Coadum II, Coadum III, and MAC.

the Receiver Estate, to use income, earnings, rents and profits to the Receiver Estate, with full power to sue for and collect, recover, receive and take into possession all goods, chattels, rights credits, monies, effects, lands, books and records of accounts and other papers;

B. to sell, rent, lease or otherwise hypothecate or dispose of the assets of the Receiver Estate;

C. to pursue, resist, and defend all suits, actions, claims and demands which may now be pending or may be brought by or asserted against the Receiver Estate;

D. to make such payments and disbursements from the funds so taken into his custody, control and possession or thereafter received, and to incur such expenses as may be necessary or advisable in the ordinary course of business in discharging the Receiver's duties;

E. to open bank accounts in the name of the Receiver on behalf of the Receiver Estate;

F. to engage and employ others (without Court approval), including but not limited to consultants, attorneys, accountants, experts, and employees of a firm owned by the Receiver, to assist in the Receiver's duties, except that any payment to others for their services shall be subject to Court approval;

- 3 -

G. to take any action which could be taken by officers, directors, partners and trustees of the Receiver Estate;

H. to suspend, terminate or grant a leave of absence to any employees of the Receiver Estate; and

I. to take such other action as may be approved by this Court.

3.

IT IS FURTHER ORDERED that no person holding or claiming any position of any sort with the Receiver Estate shall possess any authority to act by or on behalf of any of the Receiver Estate, except as authorized by the Receiver. With respect to the asset freeze set forth in the Court's Order of January 3, 2008 and reaffirmed herein, the Receiver shall be authorized, but not required, to administer, manage, and direct the marshaling, disbursement and/or transfer of monies or other assets held by third parties that are subject to the freeze. The Receiver may, in the reasonable exercise of his discretion, authorize the release, use or segregation of proceeds held by third parties if the Receiver believes such action is necessary to preserve the Receiver Estate.

4.

IT IS FURTHER ORDERED that no shareholders, officers, directors, partners or trustees of the corporations or other entities that make up the Receiver

- 4 -

Estate shall exercise any of their rights or powers with respect to the Receiver

Estate until further order of the Court.

5.

IT IS FURTHER ORDERED that all persons receiving notice of this Order

by personal service or otherwise, are hereby restrained and enjoined from

disposing, transferring, exchanging, assigning or in any way conveying any

property or assets of the Receiver Estate and from the transaction of any business

of the Receiver Estate and from the transaction of any business of the Receiver

Estate except with the approval of the Receiver.

6.

IT IS FURTHER ORDERED that all persons acting for on behalf of the

Receiver Estate, and all persons receiving notice of this Order by personal service

or otherwise, having possession of the property, business, books, records, accounts

or assets of the Receiver Estate are hereby directed to deliver the same to the

Receiver.

7.

IT IS FURTHER ORDERED that the Defendants, their agents, servants,

employees, nominees, attorneys and entities under their direct or indirect control

shall cooperate with and assist the Receiver and shall take no action, directly or

- 5 -

indirectly, to hinder, obstruct or otherwise interfere with the Receiver, in the performance of the Receiver's duties. This section shall not be construed to waive any privileges of any person, Constitutional or otherwise.

8.

IT IS FURTHER ORDERED that any brokerage institution, financial institution, bank, savings and loan, mutual fund or any other person, partnership or corporation maintaining or having custody or control of any brokerage or deposit account or other assets of any of the Receiver Estate or under their control, and that receives actual notice of this Order by personal service, facsimile transmission or otherwise shall, within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the Commission a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice.

9.

IT IS FURTHER ORDERED that, to the extent not complete, Receiver shall perform an accounting of the Defendants' securities offerings as outlined in the Commission's complaint, including, but not limited to the Defendants' solicitation, receipt, disposition and use of the proceeds from such offerings.

10.

IT IS FURTHER ORDERED that the Receiver shall have the power to compel, including by subpoena, the appearance and testimony of all persons and the production of the originals of any records, of any sort whatsoever, within the possession, custody or control of any person. The Receiver's authority under this paragraph shall not be construed to require the waiver by any person of any validly asserted privilege.

11.

IT IS FURTHER ORDERED that on fifteen (15) days written notice from the Receiver, Defendants shall make themselves available for deposition and shall produce to the Receiver the originals of any records in their custody, possession or control relating to the financial affairs, from January 1, 2006 through the present, of Coadum, Mansell, Coadum I, Coadum II, Coadum III, and MAC.

12.

IT IS FURTHER ORDERED that the Receiver may investigate in connection with discovering additional information as it relates to activities of Coadum, Mansell, Coadum I, Coadum II, Coadum III, and MAC. The Receiver shall have the authority to investigate regarding such related parties and employees prior to filing any litigation, and shall have the express authority to order consumer

reports in the course of any such investigation.

13.

IT IS FURTHER ORDERED that the Receiver and any person engaged or employed by the Receiver, are entitled to reasonable compensation for the assets of the Receiver Estate, subject to the prior approval of the Court.

14.

IT IS FURTHER ORDERED that the Receiver shall be empowered, but is not required, to file voluntary petitions for relief under Title 11 of the United States Code ("Chapter 11") for the Receiver Estate. If a bankruptcy petition is filed, the Receiver shall become, and shall be empowered to operate the Receiver Estate, and to prosecute such adversary proceedings and other matters as may be permitted under the Bankruptcy Code and/or applicable law.

15.

IT IS FURTHER ORDERED that the Receiver, should he elect to file petitions under Chapter 11 for any of the Receiver Estate for any of the Receiver Estate, he shall have fifteen (15) days from the date of such filing to file with the Bankruptcy Court any lists or schedule required to be filed with such petitions, this Court recognizing that the Receiver will require time to assemble such data for filing.

- 8 -

16.

IT IS FURTHER ORDERED that except by and until further order and leave of this Court, all creditors and other persons seeking money damages or other relief from the Receiver Estate and all others acting on behalf of any such creditors and other persons, including sheriffs, marshals, and all officers and deputies, and their respective attorneys, servants, agents and employees are hereby stayed and restrained from doing anything to interfere with the possession, recovery or management by the Receiver of the property and assets owned, controlled, belonging to or in the possession of the Receiver Estate, or to interfere with the Receiver in any manner during the pendency of this proceeding.

17.

IT IS FURTHER ORDERED that the Receiver is authorized to communicate with all such personal as the Receiver deems appropriate to inform them of the status of this matter and the financial condition of the Receiver Estate.

18.

IT IS FURTHER ORDERED that the Receiver is authorized to record this Order with government offices and to serve this Order on any person as the Receiver deems appropriate.

19.

IT IS FURTHER ORDERED that the Receiver shall promptly notify the Court and counsel for the Commission of any failure or apparent failure of the Defendants to comply in any way with the terms of this Order.

20.

IT IS FURTHER ORDERED that, expect for an act of gross negligence or intentional misconduct, the Receiver and all personnel engaged or employed by him shall not be liable for any loss or damage incurred by the Defendants or any other person, by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter.

21.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for all purposes, and that nothing stated herein shall be interpreted as invalidating, nullifying, contradicting or lessening in any regard the provisions of the Court's Order of January 3, 2008, which Order shall in all regards remain in full force and effect, except and solely to the extent explicitly provided herein.

SO ORDERED, this __15__ day of August, 2008.

ORINDA D. EVANS
U.S. District Judge

- 10 -